Filed 3/23/26  P. v. Griffin CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>RHYON T. GRIFFIN,<br><br>        Defendant and Appellant. | A172772<br><br>(San Mateo County Super. Ct.<br>  No. 24-NF-006270-A) |

Defendant Rhyon T. Griffin appeals from a judgment of conviction after pleading no contest to felony grand theft and admitting his prior strike conviction.  Prior to sentencing, Griffin filed a *Romero*[1] motion to dismiss the strike prior, which the court denied.  The court then sentenced Griffin to the low term of 16 months in state prison doubled for a total of 32 months, awarded custody credits, ordered victim restitution, and imposed fines and fees.

Griffin's court appointed counsel asks us to independently examine the record in accordance with *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), to determine if there are any arguable issues that require briefing.[2]  Counsel

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[2] Griffin did not obtain a certificate of probable cause and does not challenge the validity of his plea; thus, our review is similarly limited.  (Cal.

1

advised Griffin of his right to file a supplemental brief, but Griffin has not done so. After an independent review of the record, we find no meritorious issues. Accordingly, we affirm.

## BACKGROUND[3]

On April 6, 2019, construction site manager Kim Leowen reported the theft of his tools from the job box inside the carport of a home on Linden Avenue in the City of Atherton in San Mateo County. "The door into the home from the carport was opened from brute force" and caused damage to the wall of the home under construction that "cost about $20,000 to build." Security footage from the property on the date of the theft showed three people exit a gray Ford Fusion with license plate No. 8HUY265. Subsequent security footage showed the same vehicle returned to the home two days later, on April 8, and three people took additional tools from the property. The estimated value of the tools stolen was $6,500. Griffin was identified as one of the people seen in the security footage.

On April 17, 2024, around 6:54 a.m., Asael Gonzalez Hernandez was walking down Maple Avenue in the County of San Mateo, on his way to work, when he saw two people break into the toolbox attached to the bed of his truck (breaking the lock) and take $1,500 worth of construction tools.[4] The

Rules of Court, rule 8.304(b)(3); further rules citations are to the California Rules of Court.)

[3] The incident descriptions are taken from the two separate preliminary examinations held in seriatim on May 3, 2024, at which the investigating officers testified as to the victims' statements per Penal Code section 872, subdivision (b). (Further statutory references are to the Penal Code.)

[4] Questioning the value of the tools, the court declined to hold Griffin to answer for felony grand theft but instead issued a holding order for misdemeanor petty theft. However, as noted below, the felony information alleged grand theft in violation of section 487, subdivision (a). Nothing in the

individuals fled in a 2017 Lexus with license plate No. 8EZF901 that was later determined to have been stolen and valued at $50,000.

Around 8:10 a.m. the same day, Gonzalez Hernandez called the police again to report he saw the same two people at the Colma Home Depot. Law enforcement subsequently detained the suspects in Oakland and recovered Gonzalez Hernandez's tools and an "Autel key programmer," which is a tool commonly used "to get into vehicles without having the original key because the key programmer uses frequencies to be able to unlock and reprogram another key." Based on "stature size and tattoos on his arm," Gonzalez Hernandez identified Griffin in a field show up as "the one that took the tools from my truck."

On May 14, 2024, the People filed a felony information charging Griffin (and his codefendant who is not the subject of this appeal) with five felonies and one misdemeanor arising out of both incidents,[5] as well as two prior theft convictions (§ 666.5), a prior strike conviction (§ 1170.12, subd. (c)(1)), and an out-on-bail or court supervision enhancement alleged as to counts 1 through 3 (§ 12022.1).

---

record indicates the filed information was challenged pursuant to section 995 or other means; instead, Griffin pled no contest to felony grand theft and stipulated to its factual basis. That conviction is the subject of this appeal, but as stated, the plea itself is not challenged. (Rule 8.304(b)(3).)

[5] Felony driving or taking a vehicle—beige Lexus—without consent (Veh. Code, § 10851, subd. (a); count 1); felony receiving stolen property in the form of a motor vehicle—beige Lexus (§ 496d, subd. (a); count 2); felony theft of personal property in excess of $950, to wit tools belonging to Gonzalez Hernandez (§ 487, subd. (a); count 3); misdemeanor possession of burglary tools (§ 466; count 4); felony second degree commercial burglary (§ 460, subd. (b); count 5); and felony grand theft of personal property in excess of $950 from Linden Avenue, Atherton. (§ 487, subd. (a); count 6.)

On October 25, 2024, pursuant to a negotiated disposition, Griffin pled no contest to a single felony violation of section 487, subdivision (a), grand theft of the tools belonging to Gonzalez Hernandez (count 3), and admitted the prior strike conviction under section 1170.12, subdivision (c)(1). He acknowledged the associated maximum penalty of four years imprisonment with the Department of Corrections and Rehabilitation (CDCR), $10,000 in fines, $1,000 in restitution, $300 in "insurance restitution," and DNA testing. The represented disposition was that Griffin would be sentenced to 16 months in state prison, potentially doubled due to his strike prior for a "top" of 32 months. He was referred to the probation department for preparation of a presentencing report and reserved his right to make a *Romero* motion.

Prior to sentencing, the People filed a sentencing memorandum summarizing Griffin's criminal history, which included felony violations for assault with a deadly weapon on a peace officer (§ 245, subd. (c)) in San Mateo County in 2019, for which he was sentenced to three years in state prison; possession of a stolen vehicle (§ 496d, subd. (a)) in Contra Costa County in 2023, for which he was sentenced to 16 months in state prison; and possession of a firearm (§ 29800, subd. (a)(1)) in Alameda County on a separate date in 2023, for which he was sentenced to two years in state prison. The People recognized the court's discretion to strike Griffin's strike prior (see, e.g., § 1385, subd. (a); *People v. Orin* (1975) 13 Cal.3d 937, 945–947; *People v. Williams* (1998) 17 Cal.4th 148, 161), but urged it not to, asserting that Griffin "falls squarely within the spirit of the three strikes law." The People explained Griffin "was on PRCS [postrelease community supervision] when he committed the current offense"; performed poorly on PRCS and parole; and served a three-year sentence for his "recent" prior strike conviction from 2019. Following his release, Griffin served two

4

additional prison sentences "both stemming from convictions that occurred just last year." The People asserted that Griffin "fails to take responsibility for his actions" and, at the time of sentencing, had "pending cases out of Alameda County, including a new case with an offense date of March 1, 2024, and a PRCS violation."

Griffin filed a two-page *Romero* motion to dismiss his prior strike conviction, articulating three bases for consideration: (1) the grand theft to which Griffin pled "is neither serious, nor violent"; (2) the prior strike conviction for a violation of section 245, subdivision (c) took place in April 2019; and (3) Griffin "has expressed remorse and responsibility by pleading no contest rather than challenging the case at trial." Further, defense counsel represented that while serving in the Army, Griffin "was injured and became addicted to opiates" and "at pre-trial, the court indicated a strong likelihood that the motion would be granted." Counsel therefore requested that the court dismiss Griffin's strike prior, sentence him to probation, and allow him "to engage in treatment as directed."

The confidential presentencing report prepared by the probation department represented that the 38-year-old Griffin was "cooperative and respectful" during his interview. Griffin reported previously undisclosed sexual abuse as a child by a priest and his neighbor; he was diagnosed with attention-deficit/hyperactivity disorder in the third grade, for which he "is prescribed" Adderall and with posttraumatic stress disorder at age 25 but was not prescribed medication. Griffin stated he suffers "from a nerve condition called multiple sclerosis" and is diabetic, for which he is prescribed medication. Griffin served in the Army from 2004 through 2010 and was honorably discharged; prior to his current incarceration, Griffin worked at a family business. Griffin admitted to using "marijuana, heroin,

methamphetamine, and opioids daily between his mid-20's and early 30's" but denied any alcohol consumption. Griffin "does not believe he currently has an issue with drugs" but expressed interest in a substance abuse program and stated that "between the ages of 23 through 34, he was battling his 'opiate drug addiction.' " Griffin has been married since 2018 and is the father to young twins and financially provides for them.

Regarding the offense to which he pled, Griffin stated his neighbor asked him to ride in his girlfriend's new car to a family member's house across the bridge "to pick up some of his things." He claimed it was the neighbor who took the items from the truck. They were arrested at a home improvement store on their way back to Oakland, and only then did the neighbor tell him the car was stolen. Griffin stated he " 'made a poor decision' " and is remorseful and takes responsibility for " 'being in the wrong place at the wrong time.' " Griffin stated he is "truly sorry" and did not know something was stolen; he also dictated a statement of remorse.

Although the probation report lists no factors in mitigation pursuant to rule 4.423, the probation officer "considered the defendant's expressed willingness to comply with probation and to remain sober" but stated Griffin "appeared to not take full accountability for his actions" and noted he "continues to engage in criminal behavior despite the previous significant sentences imposed on him." The probation officer also contacted Griffin's PRCS officer in Contra Costa County, who represented that Griffin was a " 'parole walkover,' " was out of compliance with his PRCS conditions—has only reported once and was " 'very difficult' " to get in contact with—and had two pending violations. Pursuant to rule 4.421, the probation officer considered the circumstances in aggravation to include "that the crime involved actual taking of great monetary value, and the defendant's prior

6

convictions as an adult are numerous. Additionally, the defendant was on PRCS when the crime was committed, and he has served prior prison terms." The probation officer concluded, "if a *Romero* motion is granted, the defendant is considered a poor candidate for supervision services given his continued disregard for court orders and supervision conditions."

At the January 2025 sentencing hearing, Griffin, through counsel, was given the opportunity to examine the probation officer who prepared the report because "he had specific disputes with indications that were within the Probation Report." Thereafter, both attorneys briefly expounded upon their written submissions, with the People requesting a sentence of 32 months in state prison and defense counsel seeking a referral to "Veteran's Treatment Court" for sentencing. If the court was not inclined to grant Griffin's request for probation, defense counsel asked that "at least" the *Romero* motion be granted to "let my client put this case behind him." Griffin's counsel concluded, "And I have nothing but to ask the mercy of the court in this case because as part of the plea bargain we were forced to admit the strike prior."

Prior to ruling, the court represented its review of Griffin's prior record, "which deals with stolen vehicle cases first going back to 2016 in Oakland." The court summarized what it considered to be the mitigating and aggravating factors "so I can accept what [defense counsel] is indicating as mitigation concerning molest also concerning the fact that the Defendant is -- does have a dependent that would be negatively impacted by the Defendant being incarcerated." But the court also "note[d] in aggravation that the Defendant's history is lengthy. He is on [PRCS] when he picks up this case." The court challenged Griffin's counsel's representation that Griffin "took responsibility for the stolen vehicle," stating, "that's not in any way articulated in the Probation Report" and "really flew in the face of

7

realistically his criminal history with the multiple stolen vehicle cases that he's had" and the "remote and wireless key recoder" in his possession at the time of arrest.

The court found "that while the court did indicate to the defense that *Romero* was more likely to be granted based on this type of offense that he was pleading to, I'm left in a position based on his conduct, his history, his unwillingness to take responsibility to find that this case does not fall outside of the three strikes law" and declined to "strike the strike" but did "follow the low term based on the mitigated factors that have been previously stated on the record." The court therefore denied the request for probation and Veteran's Treatment Court and sentenced Griffin to 16 months in the custody of the CDCR, doubled pursuant to the strike admission for a total term of 32 months. The court awarded 275 actual custody credits plus 274 conduct credits for a total of 549 as is noted in the abstract of judgment. The court ordered restitution to Gonzalez Hernandez in an amount to be determined, a $300 restitution fine to CDCR, and a $300 fine pursuant to section 1202.45A stayed pending the successful competition of parole.

## DISCUSSION

Griffin's counsel filed a *Wende* brief identifying no error and asked us to review the record for any arguable issues on appeal; Griffin was given the opportunity to file supplemental briefing but did not. Pursuant to *Wende*, we are required "to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Wende*, *supra*, 25 Cal.3d at p. 441.) Our independent review of the record has disclosed no reasonably arguable issues requiring further briefing.

8

We highlight our examination of the court's ruling on Griffin's *Romero* motion, for which we apply "the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 371 (*Carmony*).) The "Three Strikes" law was "intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528.) To this end, it " 'does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, at pp. 377–378 [clarifying the circumstances under which a defendant can be deemed to fall outside the spirit of the Three Strikes law must be "extraordinary"].) In considering these circumstances, " ' " '[a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Carmony*, at p. 377.) Because there is a strong presumption that a sentence conforming to the Three Strikes law is "both rational and proper," a trial court will generally only be found to have abused its discretion in "limited circumstances" such as where the court was unaware of its discretion to dismiss a strike or considered impermissible factors in declining to dismiss. (*Carmony*, at p. 378.)

Here, no extraordinary circumstances exist; instead, in ruling, the court demonstrated its intentional exercise of discretion, during which the court accepted and considered the mitigating circumstances offered by

9

defense counsel[6] while considering other permissible factors such as Griffin's ongoing criminal conduct, poor performance on PRCS, and the "wireless key recoder" found on his person when he was arrested. Ultimately, it was Griffin who "left [the court] in a position based on his conduct, his history, his unwillingness to take responsibility to find that this case does not fall outside of the three strikes law." Thereafter, the low-term sentence imposed was consistent with the plea agreement; the restitution ordered only included the losses demonstrated by Gonzalez Hernandez.[7] The fines, fees and assessment appear to have been authorized by law.

## DISPOSITION

The judgment is affirmed.

---

[6] "[S]o I can accept what [defense counsel] is indicating as mitigation concerning molest also concerning the fact that the Defendant is -- does have a dependent that would be negatively impacted by the Defendant being incarcerated." (See rule 4.423(a)(8) & (b)(3).)

[7] Neither the plea agreement nor the transcript of the change of plea indicates there was a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 755, that would have authorized restitution on all counts.

10

DESAUTELS, J.

We concur:

STEWART, P. J.

RICHMAN, J.